# SUPREME COURT OF THE UNITED STATES

## STEVEN SPEARS *v.* UNITED STATES

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 08–5721.   Decided January 21, 2009

PER CURIAM.

Steven Spears was found guilty of conspiracy to distribute at least 50 grams of cocaine base and at least 500 grams of powder cocaine, in violation of 21 U. S. C. §§841(a)(1), (b)(1)(A), (b)(1)(B), 846.   At sentencing, the District Court determined that the drug quantities attributable to Spears yielded an offense level of 38, that his criminal history justified placing him in the Guidelines' criminal history category IV, and that the resulting advisory Guidelines sentencing range was 324 to 405 months' imprisonment.   The District Court was of the view that the Guidelines' 100:1 ratio between powder cocaine and crack cocaine quantities, see United States Sentencing Commission, Guidelines Manual §2D1.1(c) (Nov. 2006) (USSG),* yielded an excessive sentence in light of the sentencing factors outlined in 18 U. S. C. §3553(a).   Relying in part on decisions from other District Courts, see *United States* v. *Perry*, 389 F. Supp. 2d 278, 307–308 (RI 2005); *United States* v. *Smith*, 359 F. Supp. 2d 771, 781–782 (ED Wis. 2005), which in turn relied on a report from the Sentencing Commission criticizing the 100:1 ratio, see United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy 106–107, App. A, pp. 3–6 (May 2002) (hereinafter Report to Congress), the District Court recalculated Spears' offense level based on a 20:1 crack-to-powder ratio.   That yielded an

―――――――

*The Sentencing Commission has since reduced the crack-to-powder ratio.  See USSG, Supp. App. C, Amdt. 706 (Nov. 2007).

offense level of 34 and a sentencing range of 210 to 262 months' imprisonment. The District Court sentenced Spears to 240 months in prison, the statutory mandatory minimum. See *United States* v. *Spears*, 469 F. 3d 1166, 1173–1174 (CA8 2006) (en banc) *(Spears I)*.

On cross-appeal, the Government argued that "the district court erred by categorically rejecting the 100:1 quantity ratio and substituting its own ratio in calculating Spears's sentence." *Id.,* at 1174. The Eighth Circuit reversed Spears' sentence and remanded for resentencing, holding that "neither *Booker* nor §3553(a) authorizes district courts to reject the 100:1 quantity ratio and use a different ratio in sentencing defendants for crack cocaine offenses." *Id.,* at 1176. This Court vacated the judgment of the Eighth Circuit, and remanded for further consideration in light of *Kimbrough* v. *United States*, 552 U. S. ___ (2007). *Spears* v. *United States*, 552 U. S. ___ (2008).

On remand, the Eighth Circuit again reversed Spears' sentence and remanded for resentencing. 533 F. 3d 715, 716 (2008) (en banc) *(Spears II)*. It concluded, again, that the District Court "may not categorically reject the ratio set forth by the Guidelines," *id.,* at 717, and "'impermissibly varied by *replacing* the 100:1 quantity ratio inherent in the advisory Guidelines range with a 20:1 quantity ratio,'" *ibid.* (quoting *Spears I*, *supra*, at 1178). Spears again petitioned for a writ of certiorari. Because the Eighth Circuit's decision on remand conflicts with our decision in *Kimbrough*, we grant the petition for certiorari and reverse.

In *Kimbrough*, we held that "under *Booker*, the cocaine Guidelines, like all other Guidelines, are advisory only," 552 U. S., at ___ (slip op., at 2), and that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve §3553(a)'s purpose, *even in a mine-run case*," *id.,*

at \_\_\_ (slip op., at 21) (emphasis added). The correct interpretation of that holding is the one offered by the dissent in *Spears II:*

> "The Court thus established that even when a particular defendant in a crack cocaine case presents no special mitigating circumstances—no outstanding service to country or community, no unusually disadvantaged childhood, no overstated criminal history score, no post-offense rehabilitation—a sentencing court may nonetheless vary downward from the advisory guideline range. The court may do so based solely on its view that the 100-to-1 ratio embodied in the sentencing guidelines for the treatment of crack cocaine versus powder cocaine creates 'an unwarranted disparity within the meaning of §3553(a),' and is 'at odds with §3553(a).' The only fact necessary to justify such a variance is the sentencing court's disagreement with the guidelines—its policy view that the 100-to-1 ratio creates an unwarranted disparity." 533 F. 3d, at 719 (opinion of Colloton, J.) (citations omitted).

*Kimbrough* considered and rejected the position taken by the Eighth Circuit below. It noted that "a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the "heartland" to which the Commission intends individual Guidelines to apply.'" 552 U. S., at \_\_\_ (slip op., at 20–21) (quoting *Rita* v. *United States,* 551 U. S. 338, 351 (2007)). The implication was that an "inside the heartland" departure (which is necessarily based on a policy disagreement with the Guidelines and necessarily disagrees on a "categorical basis") may be entitled to less respect. Our opinion said, however, that the "crack cocaine Guidelines . . . present no occasion for elaborative discussion of this matter because those Guidelines do not exemplify the Commission's exercise of its

characteristic institutional role." 552 U. S., at ___ (slip op., at 21). *Kimbrough* thus holds that with respect to the crack cocaine Guidelines, a categorical disagreement with and variance from the Guidelines is not suspect.

That was indeed the point of *Kimbrough:* a recognition of district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case. The latter proposition was already established pre-*Kimbrough*, see *United States* v. *Booker*, 543 U. S. 220, 245–246 (2005), and the Government conceded as much in *Kimbrough*. 552 U. S., at ___, n. 13 (slip op., at 13, n. 13). That the Government did not prevail in *Kimbrough* proves that its concession—"that a district court may vary from the 100:1 ratio if it does so 'based on the individualized circum-stance[s]' of a particular case," *ibid.*—understated the extent of district courts' sentencing discretion.

In drawing a distinction between "individualized, case-specific" consideration of the Guidelines' ratio and cate-gorical rejection and replacement of that ratio, the Eighth Circuit relied in part, *Spears II*, *supra*, at 717, on the following passage from *Kimbrough:*

> "The [district] court did not purport to establish a ra-tio of its own. Rather, it appropriately framed its final determination in line with §3553(a)'s overarching in-struction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in §3553(a)(2)." 552 U. S., at ___ (slip op., at 22).

This says that it was "appropriate" for the District Court in *Kimbrough* not to specify what ratio it was using, but merely to proceed with §3553(a) analysis. The Eighth Circuit read that to mean that district courts, in the course of their individualized determinations, *may not*

*categorically disagree with the Guidelines ratio, and (consequently) may not substitute their own ratio for that of the Guidelines.* If it meant that, our vacating of the Eighth Circuit's judgment in *Spears I* would have been inexplicable, because that supposedly impermissible disagreement and substitution was precisely the reason for *Spears I*'s reversal of the District Court. See *Spears I*, 469 F. 3d, at 1175–1176. As a logical matter, of course, rejection of the 100:1 ratio, explicitly approved by *Kimbrough*, necessarily implies adoption of some other ratio to govern the mine-run case. A sentencing judge who is given the power to reject the disparity created by the crack-to-powder ratio must also possess the power to apply a different ratio which, in his judgment, corrects the disparity. Put simply, the ability to reduce a mine-run defendant's sentence necessarily permits adoption of a replacement ratio.

To the extent the above quoted language has obscured *Kimbrough*'s holding, we now clarify that district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines. Here, the District Court's choice of replacement ratio was based upon two well-reasoned decisions by other courts, which themselves reflected the Sentencing Commission's expert judgment that a 20:1 ratio would be appropriate in a mine-run case. See *Perry*, 389 F. Supp. 2d, at 307–308; *Smith*, 359 F. Supp. 2d, at 781–782; Report to Congress 106–107, App. A, pp. 3–6.

The alternative approach—adopted by the Eighth Circuit—would likely yield one of two results. Either district courts would treat the Guidelines' policy embodied in the crack-to-powder ratio as mandatory, believing that they are not entitled to vary based on "categorical" policy disagreements with the Guidelines, or they would continue to vary, masking their categorical policy disagreements as "individualized determinations." The latter is institutionalized subterfuge. The former contradicts our holding in

*Kimbrough*. Neither is an acceptable sentencing practice.

In opposing Spears' present petition for a writ of certiorari, the Government contends that the Eighth Circuit's opinion stands only for the noncontroversial proposition that a remand for resentencing was warranted in this case because the District Court did not properly consider all of the §3553(a) sentencing factors. Brief in Opposition 12–13. But the Government did not present that argument below, and the Eighth Circuit's opinion plainly did not rest on that ground. It concluded instead that "the district court may not categorically reject the ratio set forth by the Guidelines." *Spears II*, 533 F. 3d, at 717. The Eighth Circuit has since read its own opinion to mean what it says, see *United States* v. *Judon*, 284 Fed. Appx. 371, 372 (2008) *(per curiam)*, and so do we. In any event, to the extent the District Court cut short its sentencing analysis, it did so only because it had already determined that a mandatory minimum sentence was required, thus mooting any further arguments for a reduced sentence. The decision not to entertain pointless arguments hardly constitutes procedural error.

The dissent contends, *post*, at 1, that the Eighth Circuit recognized *Kimbrough*'s core holding when it stated that in conducting "an *individualized assessment* based upon the particular circumstances of a defendant's case, a district court may determine the 100:1 quantity ratio results in a harsher sentence than necessary," *Spears II*, *supra,* at 717. But that was not *Kimbrough*'s holding; it was the *Government's* position in *Kimbrough*, which did not prevail. And it is expressly contradicted by *Kimbrough*'s holding that district courts are entitled to vary from the crack-cocaine guidelines in a mine-run case where there are no "particular circumstances" that would otherwise justify a variance from the Guidelines' sentencing range.

The dissent believes that "[t]his petition involves the arguably distinct issue whether district courts that do

disagree with the policy underlying the Guidelines may adopt their own *categorical* crack-powder ratios in place of the ratio set forth in the Guidelines." *Post*, at 1. But that is in fact not distinct from the issue we addressed in *Kimbrough*. To say that the judge who considers the 100:1 ratio excessive cannot apply a different ratio is to say that the *Kimbrough*-sanctioned district-court disagreement with the 100:1 ratio cannot honestly be given effect. It is absurd to think that a sentence which is reasonable in light of the statutory sentencing factors, see 18 U. S. C. §3553(a), becomes unreasonable if the sentencing judge chooses to specify his disagreement, and the degree of his disagreement, with the 100:1 ratio, which is the entire basis for his Guidelines departure.

The dissent says that "*Apprendi, Booker, Rita, Gall*, and *Kimbrough* have given the lower courts a good deal to digest over a relatively short period." *Post,* at 3. True enough—and we should therefore promptly remove from the menu the Eighth Circuit's offering, a smuggled-in dish that is indigestible. Finally, the dissent points out that other courts have followed the Eighth Circuit's course, see *United States* v. *Russell*, 537 F. 3d 6, 11 (CA1 2008); *United States* v. *Gunter*, 527 F. 3d 282, 286 (CA3 2008). Both of those courts, like the Eighth Circuit, seized upon the language from *Kimbrough* quoted above in order to stand by the course they had adopted pre-*Kimbrough*— and in the case of the First Circuit, despite this Court's having vacated and remanded, in light of *Kimbrough,* the prior First Circuit judgment which had established that course. See *Pho* v. *United States*, 552 U. S. \_\_\_ (2008). If the error of those opinions is, as we think, evident, they demonstrate the need to clarify at once the holding of *Kimbrough*.

\*   \*   \*

The petition for certiorari and the motion for leave to

Per Curiam

proceed *in forma pauperis* are granted.  The judgment of
the Court of Appeals is reversed, and the case is remanded
for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY would grant the petition for a writ of
certiorari and set the case for oral argument.

JUSTICE THOMAS dissents.

# SUPREME COURT OF THE UNITED STATES

## STEVEN SPEARS *v.* UNITED STATES

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 08–5721.   Decided January 21, 2009

CHIEF JUSTICE ROBERTS, with whom JUSTICE ALITO joins, dissenting.

I dissent from the Court's summary reversal in this case. As explained by the majority here and the dissenting judges below, there are cogent arguments that the Eighth Circuit's decision was contrary to our decision last Term in *Kimbrough* v. *United States*, 552 U. S. \_\_\_ (2007). But I do not think any error is so apparent as to warrant the bitter medicine of summary reversal, and I think there are good reasons not to address the question presented at this time.

In the decision below, the Court of Appeals recognized *Kimbrough*'s core holding that district courts have authority to depart from the Guidelines based on policy concerns: "In considering the overall goals of sentencing under [18 U. S. C.] §3553(a) and conducting an *individualized assessment* based upon the particular circumstances of a defendant's case, a district court may determine the 100:1 quantity ratio results in a harsher sentence than necessary." 533 F. 3d 715, 717 (CA8 2008). This petition involves the arguably distinct issue whether district courts that do disagree with the policy underlying the Guidelines may adopt their own *categorical* crack-powder ratios in place of the ratio set forth in the Guidelines.

There is at least some language in *Kimbrough* that seems to support the Court of Appeals' holding. In *Kimbrough*, we noted with apparent approval that the District Court "*did not purport to establish a ratio of its own.*" 552 U. S., at \_\_\_ (slip op., at 22) (emphasis added).

Rather, we held, the District Court "appropriately framed its final determination in line with §3553(a)'s overarching instruction to impose a sentence sufficient, but not greater than necessary to accomplish the sentencing goals advanced in §3553(a)(2)." *Ibid.* (internal quotation marks omitted).

Two other Courts of Appeals agree with the Eighth Circuit's interpretation of this language. See *United States* v. *Russell*, 537 F. 3d 6, 11 (CA1 2008) (emphasizing "the importance of individualized, case-by-case sentencing determinations, rather than a reliance on generalized ratios"); *United States* v. *Gunter*, 527 F. 3d 282, 286 (CA3 2008) ("a district court may not employ a 'rubber stamp' approach that categorically rejects the crack/powder disparity without an individualized assessment of the §3553(a) factors"). The majority cites no circuit court decision contrary to that of the Eighth Circuit in this case.

This is not the stuff of summary reversal. The majority may well be correct that its holding today *follows* from *Kimbrough*, but it is not clear to me that this result was part and parcel of the holding in that case, especially in light of the language quoted above.

At the same time, I do not believe this case meets our normal criteria for plenary consideration. As noted, there is no split in the lower courts on the question whether a district court may replace the crack-powder ratio in the Guidelines with a categorical ratio of the court's own choosing. And, as explained above, I do not think the Court of Appeals has "so far departed from the accepted and usual course of judicial proceedings . . . as to call for an exercise of this Court's supervisory power." S. Ct. Rule 10(a). In other words, this is exactly the sort of issue that could benefit from further attention in the courts of appeals. We should not rush to answer a novel question about the application of a one-year-old decision in the absence of a pronounced conflict among the circuits.

*Apprendi*, *Booker*, *Rita*, *Gall*, and *Kimbrough* have given the lower courts a good deal to digest over a relatively short period. We should give them some time to address the nuances of these precedents before adding new ones. As has been said, a plant cannot grow if you constantly yank it out of the ground to see if the roots are healthy.