**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2547
_____

UNITED STATES OF AMERICA

v.

KHADER MUSA,
a/k/a Papito

Khader Musa, <u>Appellant</u>
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-10-cr-00350-002)
District Judge: Hon. Lawrence F. Stengel
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 24, 2014

BEFORE: FUENTES, GREENBERG AND COWEN,  <u>Circuit Judges</u>

(Filed November 13, 2014)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

COWEN, Circuit Judge.

The defendant-appellant, Khader Musa ("Appellant"), appeals the judgment of sentence entered against him by the United States District Court for the Eastern District of Pennsylvania. We will affirm.

**I.**

Because we write solely for the parties, we will only set forth the facts necessary to inform our analysis.

Appellant, along with several other individuals, was involved in a conspiracy to illegally obtain over-the-counter medications, health and beauty products, and infant formula. Once the items had been obtained, they would be sold and transported illegally to various individuals and entities in Pennsylvania, New Jersey, and New York. Appellant's role in the conspiracy was to recruit individuals to participate in organized retail theft rings that illegally obtained the over-the-counter items from large retailers, including Target Corporation. He then provided instructions to these recruits on how to execute a bar code scam and purchase illegally obtained items.

A grand jury indicted Appellant, along with Alex Musa, Koloud Musa, Jamal Musa, and Yamal Mulid. The indictment charged two counts of conspiracy to transport goods and two substantive counts of transportation of stolen goods. Appellant was specifically charged in Count One of the indictment and pled guilty to this count. In addition, Alex and Koloud each pled guilty to Counts One and Four of the indictment.

The district court conducted a sentencing hearing for Appellant. At sentencing, the court established that there were two distinct periods during which Appellant was involved in the conspiracy. First, from September 1, 2006 through October 10, 2006, and then again from February 20, 2007 to March 22, 2007. After some discussion, it was established that Appellant was responsible for approximately $37,137.00 in fraud loss, which was less than the amount initially reported in the presentence report. Moreover, in arguing that he should be recategorized as a level 10 offender, and not a level 12, Appellant's counsel argued that his client wanted the court to know that he wasn't trying to "paint him[self as] somebody who only was engaged in [illegal activity] from these two time periods. That would be a false thing for me to present you, and I'm not going to do that." (Appellant Sentencing Tr. at 13.) Nonetheless, Appellant emphasized, through his attorney, that he was not involved in this conspiracy after March 22 and that, based on the specific allegations in the case, he should be classified as a level 10 offender. The court ultimately reclassified Appellant as a level 10 offender.

When the court asked if Appellant's counsel had anything to say on his behalf, counsel stated that his family cares about him and that, although he "is no angel," he regrets his poor judgment in the case. The court then asked Appellant directly if he had anything to say, and Appellant replied, "[n]o, Your Honor, I'll leave it to the lawyer." (Id. at 21.) In addition, the Government called an investigation team leader for Target Corporation to testify about the specific impact that individuals like Appellant have on the company's profitability, as well as on retailers' profitability more generally. The

3

court then gave a within-the-guidelines sentence of nine months of imprisonment, to be followed by two years of supervised release.

Following Appellant's sentencing hearing, the court conducted a sentencing hearing for Alex Musa ("Alex"). At the hearing, Alex's attorney stressed that due to a car accident where he suffered significant nerve damage to his neck and arm, he has been declared disabled and is essentially confined to his home. Also highlighted was that he is a father of four children, has significant financial debt, and has been frightened by the lawsuit such that he will not break the law again. In addition, Alex made a statement on his own behalf, reiterating that he was sorry about the situation and "it is not something I would ever do again, and I am sorry." (Alex Musa Sentencing Tr. at 26.) The court specifically noted that it was varying downward from the guidelines range "because of [Alex's] physical condition and his family obligations, and the fact that he has done very well on supervision for an extended period of time without any violations of the law." (Id. at 30.) It then sentenced him to probation for a term of four years on each of Counts 1 and 4, to run concurrently.

The court also conducted a sentencing hearing for Alex's wife, Koloud Musa ("Koloud"). At the hearing, Koloud's attorney noted that she was not blaming her husband for her being there, and was fully accepting responsibility for her own actions. Counsel discussed her financial debt left over from student loans for her education and that, as a result of her conviction, she would not be able to obtain a license as a psychologist or psychiatrist. Stressed was the limitations on her earning potential, which

4

were exacerbated by the fact that her husband is disabled and unable to work. Also noted was that she was pregnant with her fifth child. Koloud made a statement on her own behalf, repeatedly apologizing for conduct and expressing shame and embarrassment over her actions. The court noted that Koloud had done well while on supervision and had even graduated with honors from a bachelor's program in psychology since her arrest. Also noted was her substantial commitment to the health and safety of her family. The court then sentenced her to a term of four years of probation on each of Counts 1 and 4, to run concurrently.

## II.

We review a final sentence for unreasonableness. *See United States v. Booker*, 543 U.S. 220, 261 (2005). The burden rests on the party challenging the sentence to show unreasonableness. We have recognized that "[a] within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range," although a "within-guidelines sentence is not necessarily reasonable *per se*." *United States v. Richardson*, 335 F. App'x 258, 261 (3d Cir. 2009) (quoting *United States v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006)). We conclude that Appellant's sentence here was reasonable.

Appellant does not proffer any reason why his within-guidelines range sentence was unreasonable other than that it was unfair when compared to those handed down to his co-defendants. He concedes that "a criminal defendant has no constitutional right to be given a sentence equal in duration to that of his or her co-defendants." *United States v.*

*Hart*, 273 F.3d 363, 379 (3d Cir. 2001) (citation omitted). Indeed, "a disparity of sentence between co-defendants does not of itself show an abuse of discretion." *Id.* (citation omitted). We find unpersuasive his contention that the sentence was unreasonable because his sentence included imprisonment whereas his co-defendants' sentences did not.

In sentencing his co-defendants, the district court cited several factors that were not applicable to Appellant. Under these circumstances, the mere fact that a sentencing disparity exists between Appellant and his co-defendants is insufficient to support a conclusion that Appellant's sentence was unreasonable.

Appellant also argues that his sentence was unreasonable because the Government chose to call the Target Investigation Team Leader at his sentencing hearing and did not call any witness at Alex's or Koloud's hearings. Although the district court considered the testimony offered by the Government's witness regarding the impact of Appellant's actions on Target Corporation in sentencing Appellant, at both Alex's and Koloud's sentencing hearings, the district court also stressed the need "to impose a sentence which reflects the seriousness of the offense, which promotes respect for the law, which affords deterrence, which protects the public and which avoids unwarranted sentence disparities among defendants with similar records found guilty of similar conduct." (Alex Musa Sentencing Tr. at 28-29; Koloud Musa Sentencing Tr. at 16.)

## III.

We conclude that Appellant has not met his burden of establishing that his sentence was unreasonable. The judgment of sentence entered on June 17, 2013 will be affirmed.